```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X  Case No. CV 06 0320
MARITZA SOSTRE for herself and as                (LDW)(ETB)
mother and natural guardian of
ASHLEY SOSTRE, ARAMIS JAMES SOSTRE
and MIRANDA SOSTRE; MARGARITA CINTRON,
ARAMIS SOSTRE,

                              Plaintiffs

-against-



COUNTY OF SUFFOLK, DETECTIVE MIKE
O'CONNOR, "JOHN DOE #1" (being chubby
mustached detective with Detective
O'Connor on 1/25/03), DETECTIVE JOHN
A. NEWTON, Shield #1096, "JOHN DOE #2"
(being another detective who was with
Detective O'Connor on 1/25/03), "JOHN
DOE #3" (being another detective who
was with Detective O'Connor on 1/25/03);
"JOHN DOE #4 through #8 (being members
of the Emergency Response Team who
responded to plaintiffs' home on
1/25/03; "JANE DOE", being a female
officer of the K-9 Unit who responded
to plaintiffs' home on 1/25/03,

                              Defendants
--------------------------------------X   AMENDED COMPLAINT
```

Plaintiffs, by their attorney, K.C. OKOLI, ESQ., complaining of the defendants herein, state and allege upon information and belief as follows:

JURISDICTION AND VENUE

1.  Jurisdiction is founded upon the existence of a Federal

1

Question.

2. This action is brought pursuant to the Civil Rights Acts, 42 U.S.C. §1983 and 42 U.S.C. §1985. The jurisdiction of the Court is invoked to secure the protection, and redress the deprivation of rights guaranteed to persons by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of the Court over these claims is founded on 28 U.S.C. §§1331 and 1343.

4. Venue is proper in this district, based upon the fact that the events or omissions giving rise to the claims asserted herein occurred within the district.

5. At all times herein mentioned, the individual police defendants were acting under color of law, and were acting within the scope of their employment as agents and employees of the County of Suffolk.

## SUPPLEMENTAL JURISDICTION

6. This court has supplemental jurisdiction over the state causes of action pleaded herein.

8. A Notice of Claim was duly served on behalf of Aramis Sostre on May 23, 2006, within 90 days of the accrual of his claim.

9. More than 30 days have elapsed since service of the

Notice of Claim and the defendants have not adjusted or settled the claim.

10. Plaintiffs also seek to recover damages for the wrongful conduct of the defendants described herein.

PARTIES

11. At all times herein mentioned, plaintiff MARITZA SOSTRE ("SOSTRE"), who is Hispanic, was a resident of the County of Suffolk, State of New York.

12. SOSTRE is the mother and natural guardian of ASHLEY, ARAMIS JAMES and MIRANDA, and claims both for herself and on their behalf.

13. At all times herein mentioned, ASHLEY, ARAMIS JAMES and MIRANDA, were minor children residing in the County of Suffolk, State of New York.

14. At all times herein mentioned, plaintiff MARGARITA CINTRON ("CINTRON"), who is Hispanic, was a resident of the County of Suffolk, State of New York.

15. At all times herein mentioned, plaintiff ARAMIS SOSTRE ("ARAMIS"), who is Hispanic, was a resident of the County of Suffolk, State of New York.

16. At all times herein mentioned, all the plaintiffs resided at 40 Doolittle Street, Town of Brentwood, County of Suffolk, State of New York.

17. The County of Suffolk ("COUNTY", "SUFFOLK" or "Suffolk County") is a municipality organized under and by virtue of the laws of the State of New York.

18. Upon information and belief, at all times mentioned herein, DETECTIVE MIKE O'CONNOR ("O'CONNOR") was a police detective employed by Suffolk County.

19. Upon information and belief, at all times mentioned herein, DETECTIVE JOHN A. NEWTON ("NEWTON") was a police detective employed by Suffolk County.

20. Upon information and belief, at all times mentioned herein, JOHN DOE #1 was a police detective employed by Suffolk County.

21. Upon information and belief, at all times mentioned herein, JOHN DOE #2 was a police detective employed by Suffolk County.

22. Upon information and belief, at all times mentioned herein, JOHN DOE #3 was a police detective employed by Suffolk County.

23. Upon information and belief, at all times mentioned herein, JOHN DOE #s4-8 were members of the police emergency response team, and agents of Suffolk County.

24. Upon information and belief, at all times mentioned herein, JANE DOE was a female police officer employed by the K-9 Unit of Suffolk County Police Department, and an agent of Suffolk

County.

## FACTUAL BACKGROUND

25. On January 25, 2003, at about 8:45 P.M., plaintiffs were lawfully in their home at 40 Doolittle Street aforesaid.

26. SOSTRE, who had just undergone eye surgery, was sitting in her living room with her husband, ARAMIS, having a conversation as they watched television.

27. At the aforementioned time, CINTRON was in her basement apartment at 40 Doolittle Street, aforesaid.

28. At said time, the minor plaintiffs, ASHLEY SOSTRE, ARAMIS JAMES SOSTRE and MIRANDA SOSTRE, were upstairs having their shower in readiness to turn in for the night.

29. Without any warning at all, O'CONNOR, NEWTON and some of the JOHN DOES, broke through the front door of the plaintiffs' home into the family living room where SOSTRE and ARAMIS were.

30. As the startled SOSTRE and ARAMIS jumped up from their sofa and asked, "What's going on?", some of said defendants, who were fully armed, began to run upstairs while some ran down into the basement, where CINTRON's apartment was located.

31. As some of the defendants ran to other parts of the house, the others who remained in the family living room barked out orders to SOSTRE and ARAMIS, like "Sit down and shut up!", etc.

32. Meanwhile, the heavily armed defendants who ran upstairs had confronted the minor plaintiffs who were in various

5

stages of undress.

33.  As a result of being caught literally with their "pants down", the minor plaintiffs hurriedly grabbed whatever they could lay their hands on to cover their nakedness.

34.  The defendants who went down to the basement confronted plaintiff CINTRON and put the muzzle of their gun to her chest in a threatening manner.

35.  CINTRON was terrified and confused by the actions of the defendants who did not tell her why they were in her apartment, or why they put an apparently loaded gun to her chest.

36.  When it dawned upon SOSTRE and ARAMIS that these defendants were law enforcement officers, and not criminals, and that they were going to search the house, SOSTRE asked them for their search warrant which they never produced.

37.  The defendants then began searching the plaintiffs' home for drugs.

38.  Not long after, defendants brought the minor plaintiffs and CINTRON to join SOSTRE and ARAMIS in the family living room. Defendants then confined all the plaintiffs to the small living room space.

39.  By this time, the defendants were cursing and screaming obscenities and profanities in the presence of the minor plaintiffs, and SOSTRE mildly told the defendants that her family did not use that kind of language, and appealed to the defendants to refrain from using foul language for the sake or her minor children.  Defendants ignored SOSTRE and carried on.

6

40. At about this time, one of the detectives began playing with old chuka sticks which he found in one of the closets, stating to another, "Oh remember these?". When said detective got tired of playing with the chuka sticks, he returned them to the closet shelf where he found them.

41. O'CONNOR made many insulting and patronizing remarks about the plaintiffs including, "Your house is too neat, its too nice".

42. Plaintiffs overheard one of the defendants in their kitchen say to another, "Are they citizens?", and that other responded, "I don't know".

43. Another defendant took ARAMIS to the kitchen and asked him, "Aramis where were you born?", and ARAMIS responded, "Chicago, Illinois, American Hospital, 4:00 A.M.". Despite the obvious fact that Chicago, Illinois, is in the United States, the same detective went on: "Are you a citizen?"

44. SOSTRE was becoming irritated by the questions and actions of the defendants, and showed this by her body language even though she did not disrespect the defendants.

45. A detective told ARAMIS, "Tell me the truth, tell me where all the stuff that you have in this house is or we are going to start breaking down your sheet rock". The clear suggestion, from this detective's look and tone of voice and look, was that plaintiffs were hiding drugs in their home.

46. ARAMIS responded: "If you want to break the house, go ahead and do so. The only drugs we have in this house is Avon

7

products.  You'll see empty boxes of Avon all over the house".

47.  At all times herein mentioned, SOSTRE sold Avon products from her home at 40 Doolittle Street, and her numerous customers came there to make their purchases.

48.  SOSTRE told the defendants that they had the wrong house, and that they were making a big mistake.  O'CONNOR retorted that he had been watching plaintiffs' home (40 Doolittle Street) for sometime, and had done his homework well to know that plaintiffs were dealing drugs in the house.

49.  Plaintiffs never sold and still do not sell any kind of drugs from their home at 40 Doolittle Street, Brentwood, New York.

50.  The defendants searched the entire house, breaking down doors and closets, searching clothes, deliberately throwing clothing on the floor and stepping on same.  They brought in a K-9 dog which they made go through the entire house for about two (2) hours.

51.  As JOHN DOE#3 was searching a jacket in the living room closet, ARAMIS' coat fell on the floor and ARAMIS said to him: "Excuse me, you're stepping on my coat.  I just got the coat for Christmas".  JOHN DOE #3 looked down where he was standing on ARAMIS' coat and did not move or express any regrets.

52.  The defendants were taunting plaintiffs and making fun many of the things which they found in the plaintiffs' home.  The defendants were very rude and disrespectful to the plaintiffs.

53.  At the end of their search, the defendants did not find

any drugs.  They asked if there was a weapon in the house, and ARAMIS told them that there was a gun and where to find the gun in the house.  The detectives retrieved the gun, and called in the serial number.  It came back licensed, clean and not stolen.

   54.  SOSTRE and ARAMIS began to ask, to none of the defendants in particular, who was going to repair all the damage which the defendants had done to their home.  Who was going to clean up the mess which they made.

   55.  At that point in time another detective stated, "We are going to take him [ARAMIS] in for possession of chucks", and they went to retrieve the old chuka sticks which they had earlier found in the closet.  ARAMIS said something to the effect, "You gotta be kidding me.  I've had those things since I was 15 years old.  I don't even know how to use them.  I just keep them for memory".

   56.  The defendants said it was illegal to possess those old chuka sticks.  They arrested ARAMIS without an arrest warrant, and took him to the station house on account of old chuck sticks which had no connection with the search for drugs which they conducted in plaintiffs' home.

   57.  ARAMIS believes that the defendants arrested him and seized the old chuka stick which they found in his closet to intimidate him and silence him for questioning their conduct while conducting a search of his home.

   58.  Defendants did not repair any of the doors and property which they deliberately damaged on that day, neither did they

apologize to the plaintiffs for the trouble which they put them through.

59. At all times herein mentioned, the defendants were acting in concert with one another, and appeared to be acting at the direction of O'CONNOR.

60. The defendants, who unlawfully seized ARAMIS, caused him to be arraigned on February 1, 2003, on charges of criminal possession of a weapon (chuka stick) in the Fourth degree.

61. ARAMIS was released on the condition that he must continue to appear in court during the pendency of the charge against him, and would travel outside the jurisdictional reach of the court without permission. Failure to appear on any scheduled court date would result in ARAMIS' immediate arrest and incarceration.

## COUNT I: 42 U.S.C. §1983 UNLAWFUL SEARCH & SEIZURE

62. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "61" as if fully set forth herein.

63. Upon information and belief, in order to secure the issuance of a search warrant for the home of the plaintiffs, without any reasonable or probable cause, the defendants falsely represented to a judge that drugs were being sold out of the plaintiffs' home.

64. Based upon the defendants' false representation regarding the sale of drugs, the court issued a search warrant to search plaintiffs' home for drugs and objects related to drug dealing.  At no time did the court issue a warrant for the seizure of any item which was unrelated to plaintiffs' alleged drug activities, or the arrest or seizure of ARAMIS.

65. Specifically, the defendants did not seek a search warrant to enter plaintiffs' home on the suspicion that plaintiffs had chuka sticks in their home, or based upon a reasonable or probable cause that plaintiffs had unlawful possession of said chuka sticks.  The seized chuka sticks were not described in either the application for the search warrant or in the search warrant issued.

66. The defendants had ample time and opportunity to seek a warrant to seize the chuka sticks which they found in plaintiffs' closet, but failed to do so.

67. It was not immediately apparent that the seized chuka sticks had anything to do with drug activities and they were not in "plain view" as that term is defined under New York or federal law.

68. By removing the old chuka sticks found in ARAMIS' home as they did, and seizing his person without an arrest warrant, the defendants violated ARAMIS' right under the Fourth Amendment to the U.S. Constitution.

69. Defendants further violated ARAMIS' Fourth Amendment rights by causing a criminal prosecution to be initiated and continued against him for the chuka sticks. Said violation continued until March 17, 2006, when ARAMIS was his case was adjourned in contemplation of dismissal.

70. Defendants further violated plaintiffs' civil and constitutional rights by confining them to their living room and restricting their movement for more than three hours, while the search was taking place.

71. By reason of the foregoing, plaintiffs have suffered loss and damage.

## COUNT II: 42 U.S.C. §1983 EXCESSIVE FORCE

72. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "71" as if fully set forth herein.

73. Defendants deliberately damaged the home of the defendants, and used excessive and unnecessary force in conducting the search of defendants' home, including but not limited to breaking doors and property, and putting a loaded gun to the chest of CINTRON who was not resisting them, and did not pose any threat to the defendants.

74. By reason of the foregoing, plaintiffs have suffered loss and damage.

## COUNT III: 42 U.S.C. 1983: ABUSE OF PROCESS

75. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "74" as if fully set forth herein.

76. On or about February 1, 2003, the defendants caused a criminal prosecution to be initiated against ARAMIS for criminal possession of a weapon in the Fourth Degree, based upon the old chuka sticks which were found in his home on or about January 25, 2003.

77. The aforesaid criminal prosecution was commenced because the plaintiffs took offense at the conduct of the defendants in their home, especially after the plaintiffs showed displeasure at the deliberate damage which was done to their property and the demeaning comments and questions from the defendants.

78. ARAMIS believes that the defendants, who came looking for drugs and found none, only arrested him because of plaintiffs' show of displeasure at the outrageous conduct of the defendants in plaintiffs' home.

79. The defendants initiated and continued the criminal prosecution of ARAMIS in the First District Court, Central Islip, from January 25, 2003 until March 17, 2006, when the prosecution was resolved by an adjournment in contemplation of dismissal.

80. ARAMIS made numerous court appearances in response to the aforesaid criminal prosecution by the defendants.

81. The defendants' purpose in prosecuting ARAMIS was

13

not to secure any criminal conviction, but to intimidate plaintiffs into silence for the defendants' aforesaid conduct in plaintiffs' home, and to prevent plaintiffs from pursuing the vindication of their civil and constitutional rights which were violated by the defendants.

82. The defendants did not seize the chuka sticks when they first discovered them, and did not indicate that they would arrest or file a criminal charge against ARAMIS for their presence in his home until plaintiffs showed their displeasure at the defendants' conduct.

83. The criminal abuse of process alleged by ARAMIS includes the initiation and continued pursuit of ARAMIS' prosecution for improper purposes until March 17, 2006.

84. By reason of the foregoing, plaintiff ARAMIS has suffered loss and damage.

## COUNT IV: 42 U.S.C. §§1985(3),1983 & 1981

85. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "84" as if fully set forth herein.

86. Defendants conspired with one another, while on the plaintiffs' premises, to deprive plaintiffs of the equal protection of the laws, by unlawfully seizing chuka sticks from their home in violation of the State constitution.

87. In furtherance of said conspiracy, the defendants made

racially insensitive remarks in plaintiffs' home, and arrested ARAMIS for possession of said chuka sticks, on January 25, 2003, in violation of his Fourth Amendment rights.

88. As a further overt act of the conspiracy, defendants arrested ARAMIS because plaintiffs took exception to the deliberate stepping on ARAMIS' new coat. One of the defendants had played with the chuka sticks and placed same back where he got same, and only decided to charge ARAMIS with criminal possession of same after ARAMIS expressed his displeasure at said defendant deliberately stepping on his new coat.

89. Defendants further violated the plaintiffs' equal protection rights by unlawfully profiling them on the basis of their Hispanic origin and heritage.

90. By reason of the foregoing, plaintiffs have suffered loss an damage.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

91. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "90" as if fully set forth herein.

92. The totality of defendants' aforementioned conduct including, their racially offensive remarks, total disrespect for plaintiffs in their own home, and insistence that plaintiffs' were dealing drugs from their home, without any probable cause to

so conclude, destruction of doors and other property, ransacking plaintiffs' apartment, attracting the attention of neighbors with the heavy presence of armed law enforcement personnel which gave the impression that plaintiffs were involved in serious criminal enterprise, was outrageous.

93. Said conduct went beyond all bounds of human decency, and is intolerable in any civilized society.

94. By reason of the foregoing, plaintiffs have suffered loss and damage.

95. Plaintiff demands trial by jury of all issues triable by jury.

**WHEREFORE,** plaintiffs pray for judgment against the defendants as follows:

a) On Count I, Compensatory damages in the sum of Five Million Dollars ($5,000,000.00), together with interest;

b) On Count II, Compensatory damages in the sum of Five Million Dollars ($5,000,000.00), together with interest;

c) On Count III, Compensatory damages in the sum of Five Million Dollars ($5,000,000.00), together with interest;

d) On Count IV, Compensatory damages in the sum of Five Million Dollars ($5,000,000.00), together with interest;

e) On Count V, Compensatory damages in the sum of Five Million Dollars ($5,000,000.00), together with interest;

f)   Punitive damages of Two Million Dollars ($2,000,000.00);

g)   Reasonable Attorney's fees;

h)   Costs and disbursement of this action;

i)   Such further or other relief as the court may deem just and equitable.


Dated: New York, New York
       July 14, 2006

                                        /s/ K.C. Okoli

                                        K.C. OKOLI, ESQ.
                                        (KO 7222)
                                        Attorney for Plaintiffs
                                        330 Seventh Avenue
                                        15th Floor
                                        New York, N.Y. 10001
                                        (212) 564-8152

CHRISTINE MALAFI
SUFFOLK COUNTY ATTORNEY
Attorney for Defendants
By: Arlene S. Zwilling
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788


**CERTIFICATE OF SERVICE**

This is to certify that on July 14, 2006, I served the foregoing AMENDED COMPLAINT by filing same via ECF which provides notification to ARLENE S. ZWILLING, Deputy County Attorney, Attorney for the defendants herein.

Dated: New York, New York
       July 14, 2006

                                        /s/ K.C. Okoli
                                        _____
                                        K.C. OKOLI (KO-7222)